IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION


**TOULUA KILOHANA TALLIE EDWARDS**                          **PLAINTIFF**

V.                                                             **CIVIL ACTION NO.:1:20-CV-148-DAS**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security**                                     **DEFENDANT**


**MEMORANDUM OPINION**

The plaintiff, Toulua Kilohana Tallie Edwards, seeks judicial review of the Social Security Administration's decision denying her application for Supplemental Security Income. The plaintiff asserts the administrative law judge (ALJ) committed four errors. The undersigned, having reviewed and considered the record, briefs and oral argument and having considered the applicable regulations and case law in this matter, finds the decision of the Commissioner of Social Security must be affirmed.

**FACTS**

The plaintiff, Toulua Edwards, filed for benefits on December 8, 2015 alleging onset of disability commencing on September 23, 2014. The Social Security Administration denied the claim initially and on reconsideration. After an unfavorable decision, the Appeals Council remanded the case to the ALJ. After a supplemental hearing, the ALJ again issued an unfavorable decision on November 6, 2019. (Dkt. 11, p.18-34).[1] The Appeals Council denied the request for review, and this timely appeal followed.

---

[1] The administrative record is Docket 11. Unless otherwise indicated, all references are to the administrative record. The page cites are to the court's numbering system, rather than the administrative numbering.

1

The ALJ determined Edwards had the following severe impairments: disorders of the spine, osteoarthritis, bilateral carpal tunnel syndrome, fibromyalgia, obesity, depression, anxiety disorder and an intellectual disorder. The ALJ found she retained the residual functional capacity (RFC) to perform sedentary work, with the following additional limitations: She is limited to occasional climbing of ramps and stairs, occasional balancing and stooping, never kneeling, crouching, or crawling, never climbing ladders, ropes, or scaffolds, and only frequent handling, fingering, and feeling. She requires a cane or other assistive device to ambulate and must avoid even moderate exposure to unprotected heights and moving machinery. She can perform routine and repetitive tasks, understand, remember, and carry out short, simple instructions, sustain focused attention, persistence, and pace for two-hour blocks of time, occasionally interact with coworkers, supervisors, but could never interact with the public. She can read and write simple words and sentences, cannot manage money, and cannot perform jobs requiring arithmetic. She needs a low stress work environment and cannot work at a piece-rate pace. Because of her frequent medical appointments, she needs an option to work second shift. R. 25-26. The ALJ determined the plaintiff did not have any past relevant work experience but based on the testimony of the vocational expert (VE) determined there were a significant number of other jobs that she could perform, namely as a lens inserter with 217,500 jobs nationally, implant polisher with 29,320 jobs nationally, and as an assembler with 195,000 jobs nationally.

## Analysis

**1. Did the ALJ properly weigh the consulting examining sources medical sources?**

The plaintiff argues substantial evidence does not support the weight given to the opinions of two consulting examining physicians, Drs. Mockbee and Gershon. Neither physician

2

had medical records to review, and Dr. Mockbee mentions at several points in her report that the records would be helpful. Both doctors said their reports were primarily based on the claimant's subjective complaints, but nevertheless, both found Edwards had substantial limitations. Dr. Mockbee found Edwards would probably be limited to sedentary work. The plaintiff argues that because these opinions were based primarily on Edwards' subjective complaints, substantial evidence does not support their opinions or the ALJ's adoption of parts of those opinions.

The Commissioner argues that the opinions were appropriately credited as consistent with the evidence existing at the time the reports were issued and largely consistent with the later evidence in the record. The Commissioner also points out that these reports, standing alone, were not the basis for the ALJ's decision.

Both doctors opined that Edwards had fibromyalgia, though Mockbee said this was primarily based on her subjective complaints and Gershon noted tenderness at points not consistent with a classic presentation of fibromyalgia. Both doctors limited Edwards' walking to a sedentary level of exertion. The ALJ's decisions considered these opinions, but also considered later evidence which convinced him to add limitations. He decided she also needed an assistive device to ambulate and placed restrictions on handling due to her carpal tunnel syndrome. While the opinions were based largely on the Edwards' subjective complaints, the court fails to see how this prejudices the plaintiff when neither the physicians nor the ALJ discounted her symptoms based on the lack of objective evidence.

Furthermore, the fact that Edwards continued to be treated after these examinations and the reports do not per se invalidate those opinions, particularly where, as here, the ALJ added restrictions based on those later treatment records. Accordingly, the court finds this aspect of the decision is supported by substantial evidence.

3

**2. Did the ALJ evaluate the evidence of pain, especially between 2015-2017?**

The plaintiff asserts that the ALJ failed to properly consider and factor in her pain in the decision. She points to her treatment for chronic pain due in part to her fibromyalgia, particularly from October 2015 through February 2017. These pain treatment records indicate the plaintiff consistently reported a pain level between 7/10 and 10/10. The records note diffuse joint pain, generalized muscle aches, joint stiffness and muscle spasms in her back. Edwards argues that if severe enough, pain alone can justify a finding of disability. *Cook v Heckler*, 750 F.2d 391 (5th Cir. 1985). For pain to be disabling, however, it must be "constant, unremitting and wholly unresponsive to therapeutic treatment." *Falco v. Shalala,* 27 F. 3d 160, 163 (5th Cir. 1994 ).

In a thorough, lengthy decision the ALJ spent many pages discussing Edwards' treatment and her complaints of pain. The ALJ references pain related to her back conditions, knee problems, general joint pain, and the pain from her fibromyalgia. In considering the impact of pain on her RFC, the ALJ acknowledged that Edwards experienced pain though he found her treatment records "reflect generally mild and intermittent symptoms of fibromyalgia and back pain inconsistent with the degree of limitation alleged." R. 29. The ALJ expressly made allowance in the RFC for the impact of pain on Edwards' ability to work. "To account for occasional back pain, chronic knee pain with occasional instability, reported pain, numbness, and tingling in her hands, general joint and muscle pains and mobility limitations due to morbid obesity," the ALJ found, "the claimant is limited to sedentary work," and added the multiple other restrictions contained in her RFC.

The ALJ enunciated the appropriate standard and discussed the evidence in substantial detail and reached the conclusion that the plaintiff was not disabled by pain. Though he did not

expressly address the OCH pain management records, the decision repeatedly acknowledged not just Edwards' complaints of pain, but expressly tailored the RFC to account for her pain. He included the restriction that she would need to be able to work second shift because of her continuing need for treatment. In the end, the ALJ largely credited the plaintiff's complaints of pain and found she had a very limited RFC — just not one that would eliminate all capacity for work. The court may not reweigh the evidence or substitute its judgment where, as here, the decision is supported by substantial evidence.

### 3. Did the ALJ properly determine the plaintiff's educational level?

The plaintiff argues the ALJ erred in finding she had a high school education and raises additional issues under this heading.

First, she argues the ALJ erred in finding she had a high school education. There is no error on this matter. While the plaintiff testified that she attended special education classes and the ALJ acknowledged that testimony, her school records do not indicate that she attended special education classes. They do indicate, and the ALJ mentioned, her generally below-average grades and generally below-average standardized test scores. Edwards also argues that her poor math skills are inconsistent with a high school education. Because the school records do not corroborate her testimony, the court finds there is no error in this finding. Moreover, there is no prejudice to the plaintiff. While the ALJ found she had a high school education, the RFC he crafted limited her to routine, repetitive tasks, and found she could carry out short, simple instructions. He found she could only read and write simple sentences. Though her school records and one of the examining consultants tested her and found she could perform basic mathematics, the ALJ found that she could not manage money or perform jobs requiring

5

mathematics. Given this restricted RFC, even if the ALJ erred in finding Edwards had a high school education, he did not give her an RFC consistent with that level of education.

The plaintiff's primary argument under this heading is that the plaintiff cannot perform any of the jobs selected by the vocational expert. She argues that all three jobs should be eliminated because of reasoning, language development, mathematics and/or reading requirements of the jobs. The VE identified three unskilled jobs requiring only the most rudimentary skills and was not cross-examined about the jobs selected.

The record does not support the assertion that the plaintiff lacked the necessary, limited reasoning, reading, language skills required for these jobs, nor that she lacked the very rudimentary math skills required by some of these jobs. Both her school records and the testing by Dr. Lane indicated that while limited, Edwards possessed the basic math skills involved in some of the unskilled jobs named by the vocational expert. Accordingly, the court finds no prejudicial error in the assessment of Edward's educational level or in reliance on the testimony of the vocational expert.

4.  **Did the ALJ properly consider the VE's testimony at Step Five?**

In the final assignment the plaintiff argues that the ALJ's decision misidentified the jobs the vocational expert identified at the hearing. There were two hearings in this case. At the first hearing the VE identified three other jobs that the plaintiff could perform — sorter of agricultural products, eyeglass polisher and foundation maker. However, this is not the germane testimony. Rather, the ALJ provided hypotheticals based on the RFC assessed at the second hearing and has accurately listed the jobs identified by the VE at that hearing.

6

**Conclusion**

Finding no error of law and finding the decision is supported by substantial evidence, the court affirms the Commissioner's decision denying benefits. A separate judgment will issue.

**This** the 12th day of January, 2022.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**